NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ROBERT MATTHEW CROOK, *Petitioner/Appellant*,

*v.*

JIANETTE ALICIA CROOK, *Respondent/Appellee*.

No. 1 CA-CV 25-0702 FC

FILED 03-19-2026

Appeal from the Superior Court in Maricopa County
No.   FC2024-090167
The Honorable Charlene D. Jackson, Judge

**VACATED IN PART AND REMANDED**

COUNSEL

Robert Matthew Crook, Chula Vista, CA
*Petitioner/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

**K I L E Y**, Judge:

¶1        Robert Matthew Crook ("Father") appeals from the portion of the superior court's judgment awarding retroactive child support of $23,069 to his ex-spouse, Jianette Alicia Crook ("Mother"). For the following reasons, we vacate that portion of the judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2013, a Colorado court issued a decree (the "Decree") dissolving the parties' marriage. At the same time, the court approved a parenting plan (the "Parenting Plan") that provided in part that the parties' two minor children would reside primarily with Mother during the school year and primarily with Father during the summer. The Parenting Plan ordered Father to pay monthly child support "directly" to Mother in accordance with a "previously issued" order. The Parenting Plan did not, however, set forth the amount of Father's monthly child support obligation.

¶3        Mother later moved to Arizona with the children, while Father moved to California.

¶4        In January 2024, Mother filed a request with the Maricopa County Superior Court to register the Decree and the Parenting Plan under A.R.S. § 25-1055. The court granted Mother's request. Shortly thereafter, Mother petitioned to modify the Parenting Plan to reduce Father's court-ordered parenting time. In February 2024, Mother's petition to modify was served on Father, who filed a response in opposition and requested affirmative relief of his own. The matter was set for an evidentiary hearing.

¶5        In a prehearing statement, Mother asked that Father be ordered to pay monthly child support of $1,357.

¶6        After the hearing, the superior court issued a ruling in July 2025 that largely affirmed the existing parenting time schedule, with certain exceptions not relevant here. The court granted Mother's request for an award of monthly child support of $1,357, with payments due on the first day of the month beginning August 1, 2025. Without making any findings about Father's payment of child support during the modification proceedings, the court also awarded Mother a judgment in the amount of $23,069 representing child support of $1,357 for each of the seventeen months from March 2024 (following service of Mother's petition to modify in February 2024) through July 2025.

**¶7** Father timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶8** Father does not challenge the superior court's order requiring him to pay child support of $1,357 per month. He argues, however, that the superior court abused its discretion by calculating retroactive child support without giving him credit for child support he paid during the pendency of the modification proceedings as required by the Colorado child support order. According to Father, he "consistently paid $600 per month" in child support from February 2024 through July 2025, for a total of $10,200. He asks this Court to reduce the $23,069 judgment for retroactive child support to $12,869 to account for support he paid from March 2024 through July 2025.

**¶9** We review a superior court's order modifying child support for abuse of discretion, *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010), "accepting the court's factual findings unless clearly erroneous but reviewing conclusions of law de novo." *Candia v. Soza*, 251 Ariz. 321, 324, ¶ 7 (App. 2021). A court abuses its discretion by, *inter alia*, making an error of law in reaching a discretionary conclusion or by reaching a conclusion without considering relevant evidence. *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012).

**¶10** Mother did not file an answering brief. Although an appellee's failure to file an answering brief is generally deemed a confession of error if the appeal raises debatable issues, *Tiller v. Tiller*, 98 Ariz. 156, 157 (1965) (citations omitted), this principle does not apply to issues relating to the best interests of children. *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966). Because the determination of child support is a matter that affects children's best interests, we do not reverse the judgment based solely on Mother's failure to file an answering brief.

**¶11** The superior court may modify a child support order issued in another state that is registered in this state. A.R.S. § 25-1311(A). Such modification is subject to the same requirements that apply to modification of a child support order issued by a court in Arizona. *See* A.R.S. § 25-1311(B). Child support modifications "are effective on the first day of the month following notice of the petition for modification . . . unless the court, for good cause shown, orders the change to become effective at a different date but not earlier than the date of filing the petition for modification[.]" A.R.S. § 25-503(E). Here, the court determined, consistent with Section 25-

503(E), that the modified child support amount was effective as of March 1, 2024, the first day of the month following service of Mother's petition to modify in February 2024. Father does not challenge that determination.

**¶12**        But following a modification of child support, an award of retroactive child support must take into account child support actually paid in compliance with the child support order then in effect. *See* A.R.S. § 25-510(H). The Colorado child support order in effect throughout the pendency of the modification proceedings required Father to make monthly child support payments directly to Mother. The record does not include the Colorado court's order that set the amount of child support. Father asserts, however, that the Colorado court ordered him to pay child support of $600 per month, and he did. The record shows that Father presented, as Exhibit 6 at the modification hearing, monthly statements from an account in his name with Navy Federal Credit Union showing a series of $300 transfers to "Jianette Howard."[1] Father asserts that Exhibit 6 establishes that he made "direct deposits . . . of 300 dollars each" to Mother "twice a month" throughout the modification proceedings.

**¶13**        Father's assertions about Exhibit 6 are not wholly accurate; the exhibit does not establish that Father made two $300 transfers every month throughout the pendency of the modification proceedings. Only one $300 transfer appears to have been made, for example, in November 2024, and the exhibit contains no statements after February 2025. Nevertheless, the statements in Exhibit 6 reflect over two dozen transfers of $300 each to Mother between February 2024 and February 2025. Nothing in the record suggests that Mother ever controverted this evidence.[2] Her prehearing statement did not request enforcement of the current child support order, however, or otherwise indicate that Father was in default of his child support obligation. The record thus supports Father's assertion that "at no point" did Mother claim that he "was not paying the current child support order."

---

[1] The Decree includes an order changing Mother's last name from "Crook" to "Howard." The records from Maricopa County Superior Court, however, reflect that Mother continues to use the last name "Crook."

[2] Father provided a partial transcript of the evidentiary hearing, but it does not include any discussion of child support. Although we presume that a missing transcript "support[s] the court's findings and conclusions[,]" *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995), no such presumption applies here because the court made no findings about Father's payment of child support during the modification proceedings.

**¶14** The court's July 2025 ruling does not mention Exhibit 6, or explain why the court calculated retroactive child support without giving Father credit for the $300 transfers to Mother shown on that exhibit. While a court is (obviously) not required to credit all evidence that a party presents, a court may not fail to credit relevant, uncontroverted documentary evidence without explanation. *See Dumes v. Harold Laz Advert. Co.*, 2 Ariz. App. 387, 388 (1965) ("The uncontradicted testimony of an interested party may be rejected, but where the testimony of an interested party is supported by disinterested corroboration, a rejection of that evidence amounts to arbitrary action by the court." (citation modified)).

**¶15** The child support order in effect during the modification proceedings required Father to pay monthly child support directly to Mother. Because the court's July 2025 ruling contains no reference to documentary evidence Father presented showing a series of payments to Mother during the relevant period, we cannot affirm the court's award of retroactive child support that denied Father credit for such payments without explanation. We therefore vacate the portion of the court's July 2025 ruling that awarded retroactive child support of $23,069 to Mother and remand for the superior court to redetermine Father's retroactive child support obligation.

## CONCLUSION

**¶16** We vacate the portion of the judgment awarding Mother retroactive child support of $23,069 and remand for further proceedings. We award costs to Father upon compliance with Arizona Rule of Civil Appellate Procedure 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: TM